Upon the examination I have given to this case, I have come to the following conclusions:
1. Enough had been proved when the plaintiffs rested to entitle them to go to the jury. It may be conceded that the plaintiffs had sufficient notice, from what transpired at the sale, to put them upon inquiry as to the existence and validity of the mortgage set up by Delavan. They were informed that such a mortgage had been executed, and they knew that Delavan claimed that it was still on foot. If the question was whether they werebona fide purchasers, in a sense, which *Page 472 
would enable them to avoid the mortgage, on the ground that it had not been recorded, the decision would be against them. This must have been so adjudged in the action which Delavan prosecuted against them to foreclose that mortgage. But the existence of such notice is not an answer to the allegation that they were drawn in to make the purchase by the fraudulent representations of the defendants' testator. It was no doubt evidence, bearing upon the question whether they purchased upon the faith of what Hayt said, or upon their own judgment, as to the probability of the mortgage being on foot. Their knowledge, at one time, of the mortgage, was notice of its existence, which would subject them to the lien if it were really on foot. But suppose Hayt had falsely represented that he had witnessed its payment in full, and they, believing him, had purchased on the faith that such payment had been made, the defendant could not have excused himself upon the position that they had sufficient notice to put them upon inquiry. Hayt could not complain that the purchasers had confided in his representations. Whether they did so confide, was a question for the jury.
It was not so clear that what Hayt said was simply the expression of an opinion, as that the judge would have been warranted in withholding the case from the jury on that assumption. He stated that there were only certain incumbrances upon the property, which did not include a mortgage to Delavan; and when Delavan claimed to have a mortgage, he denied that he had any; and when he said his mortgage had been delivered up conditionally, and upon a condition which had not been performed, Hayt still declared that he had no claim. These were allegations touching the existence or non-existence of facts. In form they were not opinions merely, and in substance they related to facts. Now if Hayt knew that Delavan's mortgage had been obtained on the condition mentioned, and that the condition had been evaded, he knew that the mortgage was really a lien; or if he supposed that its delivery and destruction extinguished it, he was bound to disclose the facts, that the plaintiffs, who were about to deal *Page 473 
upon the supposition that there was no lien, might have the same means of judging that he had himself. His general declaration that there was no incumbrance, included a denial of what Delavan had asserted. It is certainly possible that the defendant intended only to say, and was understood to have said, that conceding Delavan's statement his mortgage was discharged. If this was so, and the declaration was made in good faith, I conceive that the defendants would not be liable in this action; but it is quite as consistent with the language used to say that he meant to deny, and was understood to deny, that Delavan's account of the matter was true. If this was the nature of the representations, then, inasmuch as the defendant certainly knew that what Delavan pretended was substantially according to the fact, he intentionally misled the plaintiffs in a material matter, and should make good the loss which it occasioned them.
2. There was no error in allowing the declarations of the defendants' testator, made after the premises were struck down, to be given in evidence. The purchasers had not, at that time, committed themselves by signing an agreement in writing. What had been done up to that period did not bind either party; and if the purchasers had then been informed of the existence of Delavan's lien, they would have been at liberty to refuse to go on with the purchase, and no doubt would have refused.
3. I do not see that the existence of the suit on the chattel mortgage could have had any influence upon the case. It is not pretended that it resulted in satisfaction to any extent of Delavan's debt. It was not an alternative security, the existence of which would prove that the mortgage was not a lien. The proof, if given, would simply have been authentic evidence that Delavan claimed to have a concurrent remedy for the same debt. Delavan had stated this at the sale, and it had not been denied; but he considered the result of that action doubtful, and he therefore gave notice of the mortgage lien. Hayt was none the less bound to deal fairly with the purchasers respecting the mortgage, that it was possible the debt would be realized by means of a collateral security. *Page 474 
4. I think the judge ruled correctly in excluding the evidence offered to show that Hayt was not cognizant to the alteration of the assignment, which deprived Delavan of the preference he was to have, at any time before he signed that instrument. The charge against him was not that he was an actor in the fraud or breach of agreement which was practised upon Delavan, though that fact was material as to the scienter. Before the representations were made upon which the suit was brought, Hayt knew the fact that the agreement upon which the mortgage was given up had been violated. It does not seem to me material at what time he acquired that knowledge, if it was before he made the representations.
5. The action survived against the representatives of Hayt, the original defendant. (2 R.S., 447, §§ 1, 2.) The cause of action was "a wrong done" "to the rights and interests" of the plaintiffs. The exception in section 2 shows, if there was otherwise any doubt, that the prior section was intended to embrace this case.
6. The judge was requested to charge that if Hayt refused to give covenants of title, the action could not be sustained; and it is alleged that he fell into an error in declining to give that instruction. The policy of allowing actions for alleged fraudulent parol representations as to the title to or incum brances upon land sold is I think questionable. That it exposes parties to some of the evils which the statute of frauds was intended to prevent cannot be doubted. But it is too late to entertain that question, for it is now well settled that such actions will lie. (Whitney v. Allaire, 1 Comst., 305.) If a vendor can be made liable for a defect of title, or the existence of incumbrances, where he has given no covenants, it does not seem material to inquire whether he expressly refused to give them, or whether the omission arose from any other cause. If the purchaser consents to waive the usual covenants, he is none the less entitled to the exercise of good faith and honesty on the part of the vendor. (Doggett v. Emerson, 3 Story, 700, 733;Masson v. Bovet, 1 Denio, 72.) In a case where, as upon a sale of chattels, a covenant as to title is implied, an *Page 475 
express assent of the purchaser to take the article at his own risk would rebut the usual implication of a warranty; but if the vendee's consent was obtained by the fraudulent representations of the seller, he would, notwithstanding, be liable for the fraud. I think the ruling upon this point was entirely correct.
7. The only point respecting the charge about which I have had any doubt, is the refusal of the judge to instruct the jury that if Hayt really believed the mortgage was extinguished the plaintiffs could not recover. It seems very plausible to contend that in the case supposed the defendant could not have been guilty of fraud. But I think there is a view upon which the instruction would have been wrong. The declaration of Delavan, of the circumstances attending and following his giving up his mortgage, if true, showed that that instrument was still on foot. That being the conclusion of law, it is fair to intend that the purchasers would have forborne to purchase if they had known that the facts were as alleged. Hayt knew that they were as Delavan had stated, but the request assumes that he may have mistaken the law, as he certainly might, and have supposed that the material destruction of the mortgage deed would have extinguished the incumbrance. But, conceding this to be so, he was bound to give the purchasers the benefit of the facts as they existed, that they might judge for themselves. If, by the denial of Delavan's pretensions, and the assertion that he came to the auction merely "for a scarecrow to injure the sale of the farm," he meant to dispute the truth of Delavan's account of the transaction, as the jury were warranted in finding, he committed a fraud upon the purchasers. He willfully misrepresented the truth of the case upon a material point, and he cannot be excused upon the ground that he supposed they could still avoid the mortgage upon a legal principle. Delavan claimed that the facts stated by him would show the mortgage to be valid. If Hayt had intended to deal honestly, he should have admitted the assertion, and then he might properly enough have stated his opinion upon the point of law. If he had done so, and the *Page 476 
purchasers had elected to proceed with the purchase, they would have had no cause to complain. In other parts of the charge the judge clearly enough instructed the jury, that there must be an intent to defraud in order to enable them to find a verdict against the defendant. Taking the whole charge together, the meaning is, that if Hayt denied the facts which he knew — as to the circumstances attending the destruction of the mortgage — with intent to defraud the purchasers, he was liable, although he supposed the plaintiffs would be enabled to defeat it upon the facts as they existed.
8. It is objected that the judge said to the jury that Hayt was a party to the alteration of the assignment, by which Delavan was deprived of the preference which it was agreed he should have. He knew of the agreement, and he accepted and executed the assignment as trustee. This was what the judge referred to, and it bore out the remark; and it was not inconsistent with the ruling by which he excluded evidence, that he did not know of the change until he came to sign the deed.
I think the rule of damages given to the jury was the correct one.
Upon the facts, the case was a close and doubtful one, and it may be that the jury have dealt harshly with the defendants; but I think no rule of law was violated on the trial
I am in favor of affirmance.
STRONG, J., was of the opinion that the judge had been substantially requested to charge that if Hayt did not intend to defraud, believing the mortgage had been given up, canceled, and was no longer an available security, the defendants were not liable; and that in refusing so to charge he misled the jury, and a new trial should be ordered. ALLEN, J., thought that it should have been submitted to the jury, whether the declarations of Hayt were not a mere expression of opinion, and was also for a new trial. GRAY, J., expressed no opinion.
Judgment affirmed. *Page 477